UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



RECEIVED
NOV - 4 2015
Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| DIGITAL MANAGEMENT, INC.<br>6550 Rock Spring Drive # 7<br>Bethesda, MD 20817<br><br>               Plaintiff,<br><br>      v.<br><br>MARIA CONTRERAS-SWEET,<br>ADMINISTRATOR, U.S. SMALL<br>BUSINESS ADMINISTRATION<br>409 3rd Street, N.W<br>Washington, D.C. 20416<br><br>               Defendant. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff, Digital Management, Inc. ("DMI"), brings this civil action for judicial review against the above-named Defendant, Maria Contreras-Sweet, Administrator of the Small Business Administration ("SBA"), pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, for violations of the APA and the Small Business Act, 15 U.S.C. § 631 *et seq.*

2. This action challenges SBA's final actions in a decision dated October 27, 2015 in Case No. 2-2015-097 ("SBA Determination") finding that DMI is required to (i) notify the Department of Homeland Security ("DHS") of acquisitions made by DMI and acquisitions made by DMI's affiliate, Digital Mobile Innovations, Inc. ("Mobile"), and (ii) recertify its size status.

3. Plaintiff alleges that (1) SBA's size determination was based on errors of law; (2) SBA improperly evaluated the significance of DMI's acquisitions by failing to apply properly the version of 13 C.F.R. § 121.404(g) that was in effect at the time of DMI's acquisitions, as required by law; (3) SBA improperly evaluated the significance of Mobile's acquisitions under 13 C.F.R. § 121.404(g), as amended, and applied a flawed interpretation of that regulation.

4. Plaintiff alleges that the SBA Determination regarding the supposed need for DMI to recertify its size status is arbitrary and capricious, and otherwise contrary to the Small Business Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal questions); 5 U.S.C. §§ 701-706 (waiver of sovereign immunity and cause of action under the APA); 8 U.S.C. § 2201 (declaratory relief); and 8 U.S.C. § 2202 (injunctive relief). Plaintiff challenges a final agency action as defined by the APA, 5. U.S.C. § 551.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

7. Plaintiff DMI is a global, end-to-end mobility company that offers a variety of solutions, including Mobile Strategy, Brand Marketing, Web & App Development, Omnichannel Commerce, Big Data Insights, Managed Mobility Services, Cybersecurity Solutions, and Infrastructure services.

8. Defendant is Maria Contreras-Sweet, Administrator of the SBA, an independent agency of the federal government established to aid, counsel, assist and protect the interests of small business concerns.

## LEGAL FRAMEWORK

9. The Small Business Act, 15 U.S.C. § 631 *et seq.* provides that that SBA may make size determinations regarding whether a business concern is small under its applicable North American Industry Classification System ("NAICS") Code. The size standard for NAICS Code 541511, relevant to the procurement at issue in this matter, is $25 million (i.e., total annual receipts of $25 million or less as measured in accordance with the regulations).

10. Pursuant to the APA, 5 U.S.C. § 701 *et seq.*, a court reviewing a final agency action must "hold unlawful and set aside agency action, findings, and conclusions to be found to be ... (A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

11. The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The SBA Area Office Size Determination constitutes final agency action subject to review.

## FACTUAL ALLEGATIONS

12. DMI has been in business since 2002 and has developed into a leading information technology solutions and business strategy consulting firm that works primarily as a federal contractor. DMI provides solutions to transform enterprise operations in government and business, aligning innovative, robust and versatile technology capabilities with mission success. The company has a Top Secret Facility Clearance, and more than 80% of its employees serving the federal Government have security clearances.

13. DMI is a once-removed parent company to Mobile. A holding company, OneMobile, Inc., owns a majority of Mobile. In contrast to DMI, Mobile engages primarily in

commercial, non-federal work with a focus on managed mobility services. Mobile serves over 150 Fortune 1000 clients, with strengths in retail.

14.     On November 1, 2010, the Department of Homeland Security ("DHS") issued a multiple award solicitation as a small business set aside. DHS referred to the solicitation as EAGLE II. The solicitation had a functional category 1 Information Technology service rack ("FC1") set aside for SBA 8(a) Business Development ("BD").

15.     On February 23, 2011, DMI submitted an offer, including price, in response to the EAGLE II solicitation. As SBA has acknowledged, at the time that DMI submitted this offer, DMI was a small business concern as defined for the EAGLE II procurement. (Exhibit A, SBA Determination at 10.) Further, at the time of DMI's offer submission, it was well-settled under 13 C.F.R. § 121.404(g) that a concern that is small at the time of its initial offer, which includes price, is considered small throughout the life of the contract.

16.     On September 27, 2013, DHS awarded an EAGLE II contract to DMI.

17.     On July 9, 2015, DMI received a letter from SBA stating that the Contracting Officer ("CO") had protested DMI's status as a small business in connection with the EAGLE II procurement. (Exhibit B, SBA Letter dated July 9, 2015.) SBA's letter informed DMI that the basis for the protest was the CO's awareness "that DMI has acquired several business concerns and as such may be subject to recertification." (Exhibit B at 1.) Specifically, the CO supposedly alleged that "DMI has been acquiring other companies and has exceeded the EAGLE II 8(a) NAICS code 541511 and the maximum dollar threshold of $25 million that SBA certified for DMI at contract award." (*Id.*) SBA did not provide DMI a copy of the CO's protest.

18.     As a result of the CO's protest, SBA initiated Size Determination Case No. 2-2015-097, and directed DMI to provide the following information by July 21, 2015 to enable

4

SBA to verify DMI's size and make a determination as to whether DMI was required to recertify its size in order to compete for task orders under the EAGLE II Indefinite Delivery/Indefinite Quantity ("IDIQ") 8(a) competition track:

- DMI's response to the concerns of the CO with any supporting evidence;
- a completed SBA Form 355;
- a signed IRS Form 4506 for complete numbers 1, 2, 3, 9;
- a copy of DMI's Articles of Incorporation and Bylaws;
- DMI's and DMI's affiliates' last annual statements to shareholders;
- complete financial statements and Federal income tax returns for the last three completed fiscal years from the date of the SBA's letter (July 9, 2015) for DMI and any affiliates; and
- All income tax returns for DMI and each affiliate for fiscal 2014, 2013, and 2012.

(Exhibit B.)

19. On July 10, 2015, SBA extended the July 21, 2015 deadline to July 31, 2015.

20. DMI timely submitted all requested information to SBA on July 30, 2015. (Exhibit C, DMI Letter Dated July 30, 2015 ("DMI Letter").)

21. The DMI Letter identified three acquisitions that it made following the submission of its offer in response to the EAGLE II solicitation:

- DMI acquired Mission Critical Wireless, LLC in July 2012;
- DMI acquired Golden Gekko, Ltd. in November 2012; and
- DMI acquired Kalvin Consulting, Inc. in May 2013.

(Exhibit C at 3.) SBA's July 9, 2015 letter did not explicitly direct DMI to enumerate and analyze the impact of its acquisitions. (Exhibit B.) Nevertheless, DMI provided this information, as part of a larger package of information, consistent with the company's practice to be fully transparent with SBA. (Exhibit C.) In so doing, DMI did not concede that these acquisitions triggered a requirement for DMI to recertify.

22. DMI explained that it was not required to recertify its size status following these three acquisitions, because it made these acquisitions prior to SBA's revision of 13 C.F.R. § 121.404(g), effective December 31, 2013. Under the version of 13 C.F.R. § 121.404(g) that was in effect at the time that DMI made the three acquisitions listed above, a business concern was required to recertify its size status only upon *being acquired by* another business concern. DMI has not, at any relevant time, been acquired by another business concern.

23. SBA amended 13 C.F.R. §121.404, effective December 31, 2015, to require small businesses to recertify their size status not only when they are acquired, but also when they themselves make acquisitions. (Exhibit A, SBA Determination at 3 ("The rule that required firms to make recertification for size when they acquire an entity became effective December 31, 2013.").) The amended regulation provides, in relevant part, as follows:

> Recertification is required:
>
> (A) When a concern acquires or is acquired by another concern;
>
> (B) From both the acquired concern and the acquiring concern if each has been awarded a contract as a small business; and
>
> (C) From a joint venture when an acquired concern, acquiring concern, or merged concern is a participant in a joint venture that has been awarded a contract or order as a small business.

13 C.F.R. § 121.404(g)(2)(ii).

24. DMI's July 30, 2015 submission to SBA also identified and discussed two acquisitions made by its affiliate, Mobile. (Exhibit C at 4.)

- On January 29, 2014, Mobile acquired KnowledgePath Solutions, LLC.

- On February 6, 2014, Mobile acquired The Pappas Group, LLC.

(*Id.*) SBA's July 9, 2015 letter did not explicitly direct DMI to enumerate and analyze the impact of Mobile's acquisitions. Nevertheless, DMI provided this information, as part of a larger package of information, consistent with the company's practice to be fully transparent with SBA. In so doing, DMI did not concede that these acquisitions triggered a requirement for DMI to recertify.

25. Although Mobile made the two acquisitions listed above following SBA's amendment of 13 C.F.R. § 121.404(g), DMI explained that the amended rule does not require a business concern to recertify its size status as the result of acquisitions made by its affiliates. (Exhibit C at 4-7.)

26. DMI's July 30, 2015 letter also explained the relationship between DMI and Mobile to demonstrate that the two companies are separate and distinct entities.

   a. DMI is a once removed parent company to Mobile.
   b. A holding company, OneMobile, Inc., owns a majority of Mobile.
   c. The two companies specialize in providing different services, to different customers.
   d. Whereas DMI provides information technology solutions and business strategy consulting as a federal contractor, Mobile engages primarily in commercial, non-federal work with a focus on managed mobility services.
   e. Not only are the two companies separated by a holding company for Mobile, the two companies enforce their separateness to the fullest possible degree.
   f. Mobile observes its own corporate formalities and has its own DUNS number.
   g. Mobile has its own substantial independent back office functions.
   h. Mobile's employees are not considered DMI employees.
   i. The two companies use different charge codes for government and commercial work, even within functions where personnel overlap.

j. The companies also track their accounting separately in the shared software accounting system, Deltek, providing a further degree of separation.

k. The companies maintain separate bank accounts.

l. Mobile is run by a separate Board of Managers.

m. The ownership of the two companies does not overlap.

Thus, DMI explained and supported with extensive case law that Mobile's acquisitions cannot be imputed to DMI for purposes of determining whether DMI is required to recertify its size status. (Exhibit C at 4-7.)

27. On October 27, 2015, SBA ruled that although DMI was a small business concern for the EAGLE II procurement at the time of initial offer, it was required to recertify its small business status as a result of the acquisitions of both DMI and Mobile. (Exhibit A at 10.) SBA ruled that DHS can no longer count the options or orders issued under the contract toward DHS's small business goals, and that DHS and DMI must immediately revise all applicable Federal contract databases to reflect DMI's new size status. (*Id.*) At the time of the SBA Determination, DMI had already certified its current size in the applicable federal database as "other than small."

28. SBA ruled that DMI's acquisitions triggered a requirement for DMI to recertify its size status, even though DMI made its acquisitions prior to SBA's amendment of 13 C.F.R. §121.404(g), effective December 31, 2013. The SBA Determination reasoned that it "always intended" to require recertification "for any type of acquisition or merger" and that "it was never SBA's intention to limit the recertification rule to only small businesses being acquired by other entities." (Exhibit A at 6.)

29. SBA also ruled that Mobile's acquisitions triggered a requirement for DMI to recertify its size status, rejecting DMI's explanation that 13 C.F.R. § 121.404(g) (effective December 31, 2013) does not apply to acquisitions made by small business's affiliates. (Exhibit

A at 8-10.) Although the record before SBA contained no evidence that DMI directed Mobile to make acquisitions for purposes of circumventing the recertification requirement, SBA asserted that "it is not the intention of SBA to allow small business concerns to have subsidiary firms that it controls to acquire other entities to circumvent recertification requirements." (*Id.* At 8.) SBA rejected DMI's evidence and argument regarding the separateness of DMI and Mobile, and stated that "DMI controls Mobile regardless of how far removed it is on the organizational chart." (*Id.* At 9.)

30. On November 2, 2015, DMI timely appealed the SBA Determination to the Office of Hearings and Appeals ("OHA"). (Exhibit D, OHA Appeal.)

## CLAIMS FOR RELIEF

### COUNT 1

**The SBA Determination that DMI was Required to Recertify Its Size Status as a Result of DMI's Acquisitions was Based on Material Errors of Law Such that It is Arbitrary and Capricious, an Abuse of Discretion, and Otherwise Not In Accordance with the Small Business Act**

31. Plaintiff repeats and incorporates by reference the assertions contained in paragraphs 1-30.

32. At the time that DMI submitted its offer in response to the EAGLE II solicitation, DMI was a small business concern for the EAGLE II procurement. (Exhibit A at 10.)

33. Pursuant to 13 C.F.R. § 121.404(g), "[a] concern that qualified as a small business at the time it receives a contract is considered a small business throughout the life of the contract. Where a concern grows to be other than small, the procuring agency may exercise options and still count the award as an award to a small business."

34. At the time that DMI acquired (i) Mission Critical Wireless, LLC, (ii) Golden Gekko, Ltd., and (iii) Kalvin Consulting, Inc., 13 C.F.R. § 121.404(g) clearly required a small

business concern to recertify its size status if the small business concern was acquired by another firm. (Exhibit A at 5 ("...the regulations clearly required a business that was acquired by another entity to recertify its size after the acquisition...").) The regulation did not require recertification if a small business concern acquired another company, as occurred with DMI's acquisitions of Mission Critical Wireless, Golden Gekko, and Kalvin Consulting.

35. Well after DMI acquired those companies, SBA amended 13 C.F.R. § 121.404(g) to expressly require recertification when a small business makes an acquisition:

> Recertification is required:
>
> (A) When a concern *acquires* or is acquired by *another concern*;
>
> (B) From both the acquired concern and the acquiring concern if each has been awarded a contract as a small business; and
>
> (C) From a joint venture when an acquired concern, acquiring concern, or merged concern is a participant in a joint venture that has been awarded a contract or order as a small business.

13 C.F.R. § 121.404(g)(2)(ii) (emphasis added). SBA improperly applied this amendment to 13 C.F.R. § 121.404(g) retroactively to rule that DMI was required to recertify its size status based on acquisitions that DMI completed prior to the effective date of the rule change. The rule nowhere stated that it would be applied retroactively.

36. SBA stated that it "never intended for the recertification requirement to be directed only to the small businesses being acquired" and that the rule, even before amended, "was always intended for any type of acquisition or merger[.]" (Exhibit A at 6.)

37. However, in connection with amending the rule, SBA published a notice in the Federal Register on October 2, 2013 admitting that the existing rule, prior to the amendment, did

not clearly require recertification in instances where a small business concern acquired another company, and that this issue had been raised by the business community over the course of many years:

> SBA proposed to clarify only two issues that have been raised over the past few years relating to this recertification rule, which has been in effect for several years. First, while the regulations clearly required a business that was acquired by another entity to recertify its size status after the acquisition, such a requirement was not as clear where a business that had previously certified itself to be small acquired another business.

(Exhibit A at 5.)

38. In the same October 2, 2013 comment in the *Federal Register*, SBA never stated that SBA had always intended 13 C.F.R. § 121.404(g) to apply to acquisitions made by a small business concern.

39. On the contrary, SBA stated that it was "proposing" to amend the rule so that the recertification requirement would apply to acquisitions made by a small business concern: "SBA proposed that re-certification should be required in either case since the acquisition may render the concern other than small for the particular contract." (Exhibit A at 5.)

40. Regardless of whether SBA always intended to require small businesses to recertify their size status after making an acquisition, such intent was irrelevant. SBA should have analyzed whether the operative regulation, in effect when DMI made its initial certification, expressly required DMI to recertify its size status. DMI should not have had to guess at SBA's unstated intent when discerning its obligation under the regulation.

41. SBA committed reversible error, acted arbitrarily and capriciously and abused its discretion by its misapplication of the government regulation as it existed at the time of the contract award.

## COUNT 2

### The SBA Determination that DMI was Required to Recertify Its Size Status as a Result of DMI's Revenue Growth was Based on Material Errors of Law Such that It is Arbitrary and Capricious, an Abuse of Discretion, and Otherwise Not In Accordance with the Small Business Act

42. Plaintiff repeats and incorporates by reference the assertions contained in paragraphs 1-41.

43. SBA stated: "It is noted that DMI's average revenue for the three years ending 2013, 2012, and 2011 was well above the $25 million size standard assigned to this procurement. The average revenue for the three years ending 2012, 2011, and 2010 was well above the $25 million size standard assigned to this procurement." (Exhibit A at 9-10.)

44. SBA informed DMI in the July 9, 2015 letter that the basis for the CO's protest was DMI's acquisition activity, not DMI's revenue growth. (Exhibit B.)

45. Further, SBA has conceded that DMI "was a small business concern for the subject procurement at the time of initial offer…" (Exhibit A at 10.)

46. Pursuant to 13 C.F.R. § 121.404(g), as amended, "[a] concern that qualifies as small at the time it receives a contract is considered a small business throughout the life of that contract. Where a concern grows to be other than small, the procuring agency may exercise options and still count the award as an award to a small business." The regulation lists a number of exceptions to that rule. A business concern's revenue growth is not one of the listed exceptions.

47. SBA committed reversible error, acted arbitrarily and capriciously and abused its discretion by taking into consideration DMI's average annual revenues in determining whether DMI was required to recertify its size status.

## COUNT 3

### The SBA Determination that DMI was Required to Recertify Its Size Status as a Result of Mobile's Acquisitions was Based on Material Errors of Fact and Law Such that It is Arbitrary and Capricious, an Abuse of Discretion, and Otherwise Not In Accordance with the Small Business Act

48. Plaintiff repeats and incorporates by reference the assertions contained in paragraphs 1-47.

49. Mobile acquired two companies following the effective date of 13 C.F.R. § 121.404(g), as amended.

50. However, the regulation, as amended, does not purport to apply to acquisitions made by affiliates of a small business concern. The amended regulation makes no mention or reference to affiliation in defining the circumstances when recertification is required.

51. The amended regulation refers to "a concern," meaning the specific business concern holding the contract, not "a concern and all of its affiliates and subsidiaries."

52. SBA erroneously added the concept of affiliation to 13 C.F.R. § 121.404(g), and on that basis, ruled that DMI was required to recertify its size status following acquisitions made by Mobile.

53. Further, SBA erroneously disregarded information that DMI submitted showing that DMI and Mobile are separate and distinct entities, which respect and enforce corporate formalities. SBA erroneously pierced the corporate veil of DMI by imputing Mobile's acquisitions to DMI.

54. SBA stated: "Despite DMI's contention that SBA didn't specifically state in the recertification requirements that acquisitions by subsidiaries require recertification, it is not the intention of SBA to allow small business concerns to have subsidiary firms that it controls to acquire other entities to circumvent recertification requirements." (Exhibit A at 8.) SBA had no

evidence before it indicating that DMI directed Mobile to engage in acquisitions for the purpose of circumventing recertification requirements. On the contrary, the evidence before SBA supported DMI's assertion that DMI and Mobile are separate entities, which respect and enforce corporate formalities.

55. SBA committed reversible error, acted arbitrarily and capriciously and abused its discretion by applying the amended regulation to acquisitions made by DMI's affiliate Mobile.

## PRAYER FOR RELIEF

*WHEREFORE,* Plaintiffs respectfully request that this Court order the following relief:

1. Declare that SBA has violated the Small Business Act and the APA for the reasons and in the manner alleged above.

2. Enjoin SBA from enforcing its determination that DMI is required to recertify its size status.

3. In the alternative, remand the decision to SBA for a redetermination that correctly applies the law and the facts.

4. Vacate the decision that DMI must recertify its size status based on (i) the acquisitions of DMI, (ii) the acquisitions of Mobile; and/or (iii) DMI's average annual revenues.

5. Award Plaintiff reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

6. Grant Plaintiff such other and further relief as this Court deems just, proper, and equitable.

Dated: November 4, 2015

                                        Respectfully Submitted,

                                        **ARNOLD & PORTER LLP**

                                        David P. Metzger / dlc
                                        David P. Metzger
                                        (D.C. Bar # 362553)
                                        601 Massachusetts Avenue, N.W.
                                        Washington, D.C. 20001
                                        Tel:    202-942-6755
                                        Fax:   202-942-5999

                                        *Attorney of Record for*
                                        *Digital Management, Inc.*

*Of Counsel*:
Kristen E. Ittig
(D.C. Bar # 452340)
Dominique L. Casimir
(D.C. Bar # 487627)

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November 2015 a true and correct copy of the attached Compliant for Declaratory Judgment and Injunctive Relief and Exhibits were served by hand delivery on:

Keith Morgan
Deputy Chief, Civil Division
U.S. Attorneys Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Keith.morgan@usdoj.com
Tel: 202-252-1900

*David Metzger /dlc*