UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIGITAL MANAGEMENT, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>MARIA CONTRERAS-SWEET,<br>Administrator, United States Small<br>Business Administration,<br><br>  Defendant. | Civil Action No. 15-1996 (JDB) |

## MEMORANDUM OPINION AND ORDER

Digital Management, Inc. (DMI) won a government contract in 2013 that was set aside for small businesses. Generally, a business that is small when it makes its offer—as DMI was—continues to be considered small throughout the life of a contract, even if it grows to be other than small—as DMI did. But there are exceptions to this general rule—circumstances that require a business that was small at the time of its offer to "recertify" its size. The Small Business Administration (SBA) determined that such an exception applied to DMI: it was required to recertify its size because it had acquired several businesses since its offer. And recertifying meant acknowledging that DMI was no longer small.

DMI contends the SBA's determination was mistaken and seeks a preliminary injunction barring its enforcement. DMI concedes that, under the relevant regulation now in effect, acquisitions by a small business trigger an obligation to recertify. But the company argues that, under the regulation in effect when it acquired the other businesses, only the acquisition of a small business triggered recertification—and since DMI was not itself acquired, it did not need to recertify. DMI says emergency preliminary relief is necessary because the SBA's flawed

1

determination precludes DMI from obtaining further work under a variety of government contracts set aside for small businesses. The Court concludes, however, that DMI has failed to show that it is likely to succeed on the merits of its claim. And even if that conclusion is not by itself dispositive, the other factors courts consider in deciding whether to grant preliminary relief do not weigh heavily in DMI's favor. The Court will therefore deny DMI's motion.

## BACKGROUND

### 1. THE REGULATORY BACKGROUND

Under the Small Business Act, "[i]t is the policy of the United States that small business concerns . . . shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." 15 U.S.C. § 637(d)(1). Federal agencies must set goals for participation in contracting by small businesses and develop plans to achieve those goals. Id. § 644(g)(2). That of course requires knowing which businesses are "small," and so the SBA has enacted regulations establishing the relevant criteria. See generally 13 C.F.R. pt. 121 ("Small Business Size Regulations"). The SBA also has a regulation that establishes when a business must satisfy those criteria in order to qualify as "small" with respect to a given government contract. See 13 C.F.R. § 121.404. The general rule is that the size of a business is assessed as of the date the business makes its initial offer. Id. § 121.404(a). And, generally, a business "that represents itself as a small business and qualifies as small at the time of its initial offer . . . is considered to be a small business throughout the life of that contract." Id. § 121.404(g). This means that even if a small business outgrows the "small" criteria during the life of the contract, it is still considered small for purposes of that contract, so that (for instance) the procuring agency can count the performance toward its small business contracting goals. See Small Business Size Regulations, 71 Fed. Reg. 66,434, 66,434–35 (Nov. 15, 2006).

But there are exceptions to this "life of the contract" rule. Under certain circumstances, a business must recertify during the life of the contract that it remains small or, if it is not, acknowledge that it has become "other than small." See 13 C.F.R. § 121.404(g)(1)–(3). Of critical importance here, recertification is required "[i]n the case of a merger or acquisition." Id. § 121.404(g)(2)(i). As first promulgated in November 2006, the regulatory text did not define the term "acquisition." See Small Business Size Regulations, 71 Fed. Reg. at 66,444. In late 2013, however, the SBA revised the regulation by adding a new subprovision that specifies, among other things, that "[r]ecertification is required . . . [w]hen a concern acquires or is acquired by another concern." 13 C.F.R. § 121.404(g)(2)(ii)(A); Acquisition Process: Task and Delivery Order Contracts, Bundling, Consolidation, 78 Fed. Reg. 61,114, 61,131 (Oct. 2, 2013). The scope of the recertification requirement as it existed before the 2013 revision (for simplicity's sake, the "old version" of the regulation) is the key dispute in this case.

2. **THE FACTUAL BACKGROUND**

DMI describes itself as "a leading information technology solutions and business strategy consulting firm that works primarily as a federal contractor." Compl. [ECF No. 1] ¶ 12. In February 2011, DMI submitted an offer on a solicitation by the Department of Homeland Security (DHS) for a contract dubbed "EAGLE II." Id. ¶¶ 14–15. EAGLE II was a "multiple-award contract vehicle," meaning that the contract was not for a single job or procurement, but rather for the opportunity (shared by multiple awardees) to bid on a stream of future "task orders." The EAGLE II solicitation that DMI responded to was set aside for small businesses. Id. ¶ 14. All agree that DMI was "small" at the time it submitted its offer. Id. ¶ 15; SBA Size Determination, Ex. A to Compl. [ECF No. 1-1], at 10. In September 2013, DHS awarded an EAGLE II contract to DMI. Compl. ¶ 16.

Roughly two years later, the SBA alerted DMI that the EAGLE II Contracting Officer had called into question whether DMI was still small, given DMI's apparent acquisition of a number of businesses. Id. ¶ 17. The SBA initiated a size inquiry and sought a variety of information from DMI. Id. ¶ 18. DMI provided the information and acknowledged that it had acquired three businesses since its EAGLE II offer, in July 2012, November 2012, and May 2013, respectively. Id. ¶ 20–21. DMI expressed its view that the effect of these acquisitions was governed by the old version of § 121.404(g), and that the old version required recertification only if the small business was acquired, not if the small business did the acquiring. And absent a need to recertify, DMI explained, it was entitled to continue to be considered small under the "life of the contract" rule. Id. ¶ 22.

The SBA's Area II Office of Government Contracting disagreed, issuing a size determination on October 27, 2015, that concluded that DMI was required to recertify. The agency noted that the old version of the regulation said simply that recertification was required "[i]n the case of a merger or acquisition." SBA Size Determination at 5 (quoting 13 C.F.R. § 121.404(g)(2) (2012)). In the agency's view, this phrase covered both acquisitions by a small business and acquisitions of a small business. Id. The agency acknowledged that the 2013 amendment made the regulation's applicability to both types of acquisitions unmistakable, but it said the revision merely clarified what had already been true under the old version. Id. at 5–6. "The SBA never intended for the recertification requirement to be directed only to small businesses being acquired. Rather, it was always intended for any type of acquisition or merger" to trigger recertification. Id. at 6. Because DMI had concededly acquired other businesses since its initial size certification, it was required to recertify and acknowledge "that it was no longer a small business concern." Id.[1]

---

[1] The SBA also concluded that DMI was required to recertify because an affiliated company had made acquisitions in late 2013 and early 2014. SBA Size Determination at 7–9. In proceedings before this Court, however,

4

DMI promptly filed this lawsuit against the SBA Administrator (in her official capacity), alleging that the SBA's size determination rested on legal error, was arbitrary and capricious, and thus violated both the Administrative Procedure Act and the Small Business Act. Compl. ¶¶ 31–55. Shortly after filing its complaint, DMI also moved for a preliminary injunction. Pl.'s Mot. TRO and Prelim. Inj. [ECF No. 2]; see also Pl.'s Mem. in Supp. [ECF No. 2-1] ("Pl.'s Mem."). After the parties briefed the motion, the Court held a hearing on December 2, 2015.[2]

## DISCUSSION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20. As this Court has recently noted, there is some question in this circuit about whether, or to what extent, a particularly strong showing on one of these factors can make up for a weak showing on another. Guttenberg v. Emery, 26 F. Supp. 3d 88, 100–01 (D.D.C. 2014); see also Sherley v. Sebelius, 644 F.3d 388, 392–93 (D.C. Cir. 2011). But the answer to that question makes no difference here. Even if it were permissible for a court that pegs a plaintiff's likelihood of success at 50% or below to grant a preliminary injunction in light of extremely strong showings on the other factors—a

---

the agency has declined to defend (though it has not expressly disavowed) the position that those acquisitions triggered an independent obligation to recertify. See Def.'s Opp'n [ECF No. 6] at 12; Mot. Hr'g Tr. [ECF No. 11] at 40. The Court will therefore not address whether that portion of the size determination was legally sound.

[2] DMI has also filed an administrative appeal of the size determination with the SBA's Office of Hearings and Appeals (OHA). Compl. ¶ 30. The SBA has not disputed DMI's assertion that—notwithstanding the OHA appeal—the Area Office's decision is "final" within the meaning of the Administrative Procedure Act and therefore subject to judicial review now. Id. ¶ 11; see also DSE, Inc. v. United States, 169 F.3d 21, 27 (D.C. Cir. 1999) (holding that because an Area Office size determination would remain operative during the pendency of an OHA appeal, it was subject to immediate judicial review).

premise hard to square with Winter—the outcome here would be the same. For as the Court will explain, DMI is unlikely to succeed on the merits, and the other factors do not weigh strongly in its favor.

The SBA contends that the normal preliminary injunction analysis is unnecessary in this case because injunctive relief is flatly prohibited by statute. The statutory provision outlining the powers of the Administrator provides that she can sue and be sued, "but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or [her] property." 15 U.S.C. § 634(b)(1) (emphasis added). On its face, this language might seem to doom DMI's motion, but some courts that have examined the statute in depth have decided that it is not a sweeping ban on all injunctions against the agency. See Ulstein Mar., Ltd. v. United States, 833 F.2d 1052, 1056–57 (1st Cir. 1987); Cavalier Clothes, Inc. v. United States, 810 F.2d 1108, 1110–12 (Fed. Cir. 1987). Precedent from the D.C. Circuit is ambiguous. Valley Forge Flag Co. v. Kleppe, affirming the denial of a preliminary injunction, could be read as relying on the anti-injunction language in § 634(b)(1), but could also be read as simply finding no merit in the plaintiff's claim. 506 F.2d 243, 245 (D.C. Cir. 1974) (per curiam). In Oklahoma Aerotronics, Inc. v. United States, setting aside an SBA decision as unlawful under the Administrative Procedure Act, the court found the SBA's "arguments about . . . injunctive relief [were] irrelevant," but did not explain what those arguments were or why they were irrelevant. 661 F.2d 976, 977 (D.C. Cir. 1981) (per curiam). Thankfully, this Court need not resolve the mysteries of the statute here, as it concludes that a preliminary injunction is unwarranted whether or not § 634(b)(1) precludes such relief. See Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin., 858 F. Supp. 2d 1, 22 (D.D.C. 2012) (likewise bypassing the § 634(b)(1) issue where plaintiff "failed to satisfy the traditional four-part test for a preliminary injunction").

1. **DMI IS UNLIKELY TO SUCCEED ON THE MERITS**

The merits question here is whether the SBA Area Office's size determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). And that inquiry boils down to whether it was arbitrary and capricious for the agency to interpret the old version of 13 C.F.R. § 121.404(g)—the version in effect at the time of the acquisitions at issue—as requiring DMI to recertify its size when it acquired other businesses. In the Court's view, it was not.

The old version of the regulation provided: "In the case of a merger or acquisition, where contract novation is not required, the contractor must, within 30 days of the transaction becoming final, recertify its small business size status to the procuring agency, or inform the procuring agency that it is other than small." 13 C.F.R. § 121.404(g)(2) (2012). In the Court's view, and in agreement with SBA's reasoning in the size determination, the most natural reading of this language encompasses both an acquisition <u>of</u> the small business and an acquisition <u>by</u> the small business. An average speaker of English would view either scenario as a "case of a[n] . . . acquisition," and nothing in the surrounding text suggests a limitation. On its face, then, the regulation applied to DMI: when DMI acquired the other businesses there was a "case of a merger or acquisition," and hence a need to recertify.

DMI concedes that this language <u>could</u> be read to encompass both types of acquisitions, but says that the "legislative history" indicates that it was meant to cover only acquisitions <u>of</u> the small business. <u>See</u> Pl.'s Reply [ECF No. 9] at 14–15. This theory is not wholly unfounded. It is true that the agency commentary accompanying the old version expressly mentioned the problem of businesses continuing to be deemed small even after they were acquired by large companies. <u>See</u> Small Business Size Regulations, 71 Fed. Reg. at 66,436 (final rule); Size for Purposes of the

7

Multiple Award Schedule and Other Multiple Award Contracts, 68 Fed. Reg. 20,350, 20,352 (Apr. 25, 2003) (proposed rule).  The problem for DMI, however, is that nothing in the commentary limits the regulation's applicability to that scenario alone.  In other words, there is nothing in the commentary <u>inconsistent</u> with the broad, natural reading of the regulation's text.  For example, in the final rulemaking, the SBA said that "this rule will require re-certification when a small business concern becomes other than small due to acquisition or merger, <u>such as</u> when the contractor is acquired and operated as a subsidiary of a large business."  71 Fed. Reg. at 66,436 (emphasis added).  Acquisition <u>of</u> a small business was thus given as an <u>example</u> of the regulation's coverage, not its sole object.  None of the administrative history materials clearly indicate that the regulation did not mean what its text most naturally conveyed.[3]

   DMI also tries to make much of the 2013 revision of the regulation.  As noted, that revision removed all doubt that "[r]ecertification is required . . . [w]hen a concern acquires or is acquired by another concern."  13 C.F.R. § 121.404(g)(2)(ii)(A).  In DMI's view, the new regulation was "a complete change from the old rule" that "used entirely new language" and "jettisoned completely the words 'In [the] case of [a] merger or acquisition'"—all of which goes to show that the old version had a narrower scope.  Pl.'s Reply at 13.  But DMI's characterization of the revision is simply wrong.  The new version keeps <u>every word</u> of the old version in what is now labelled subsection (g)(2)(i).  <u>See</u> 13 C.F.R. § 121.404(g)(2)(i).  There is now also a subsection (g)(2)(ii), which is new, and which in part clarifies that both forms of acquisition trigger an obligation to

---

[3] In addition to the materials just discussed, DMI also relies on a 2006 Senate Report and an April 2006 Federal Register entry, both of which DMI thinks support the proposition that the old version was aimed solely at acquisitions <u>of</u> a small business.  <u>See</u> Pl.'s Mem. at 11 n.3 (citing S. Rep. No. 109-361, at 40 (2006)); Pl.'s Supp. Mem. [ECF No. 12] at 4–5 (quoting Small Business Size Standards, 71 Fed. Reg. 19,812 (Apr. 18, 2006)).  But neither authority is on point.  The Senate Report discusses a bill that was never enacted into law, and does not discuss the old (or any other) version of 13 C.F.R. § 121.404(g).  The April 2006 Federal Register entry discusses a change to § 121.404<u>(i)</u>, not § 121.404<u>(g)</u>.  The relevant version of subsection § 121.404(g), moreover, was not finalized until November 2006.

recertify.  See id. § 121.404(g)(2)(ii).  This is not a "complete change" that uses "entirely new language," and it certainly does not "jettison completely" the crucial phrase, "In the case of a merger or acquisition."  That phrase remains, unchanged, at the very start of subsection (g)(2); new material has simply been added that fleshes out its meaning.  The structure of the revision is thus consistent with the idea that the SBA was only clarifying the existing rule, not changing it.  Which is exactly what the SBA claimed it was doing when it proposed the revision in 2012.  See Acquisition Process: Task and Delivery Order Contracts, Bundling, Consolidation, 77 Fed. Reg. 29,130, 29,136–37 (May 16, 2012) ("SBA is proposing to clarify two issues that have been raised under this recertification rule that SBA issued in 2006. . . . [T]he proposed rule clarifies that recertification is required from both the acquired concern and the acquiring concern.").  While it is theoretically possible that this was a disingenuous, after-the-fact interpretation of the old version, DMI has not proffered—nor has the Court found—any reason to think so.  There is simply nothing in the record—here or before the SBA—to support DMI's position.

DMI urges that the 2013 revision at least illustrates that the old regulation was ambiguous.  But even if that were so, how would it help DMI?  "It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail.  When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation."  Decker v. Nw. Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013) (internal quotation marks omitted).  The high hurdle of "plainly erroneous or inconsistent with the regulation" is surely not cleared here, so ambiguity would not make the SBA's interpretation arbitrary and capricious.

It is possible, the Court recognizes, for an agency's interpretation of its regulations to be permissible and yet sufficiently unforeseeable that "an agency may not deprive a party of property

9

by imposing civil or criminal liability" on the basis of that interpretation. Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995). But DMI makes only cursory feints toward an argument of this sort. It cites none of the (extensive) case law concerning "fair notice" in administrative law. See, e.g., Trinity Broad. of Fla., Inc. v. FCC, 211 F.3d 618, 628 (D.C. Cir. 2000); Gen. Elec. Co., 53 F.3d at 1328–29; Gates & Fox Co. v. Occupational Safety & Health Review Comm'n, 790 F.2d 154, 156 (D.C. Cir. 1986); Arkansas Dep't of Human Servs. v. Sebelius, 818 F. Supp. 2d 107, 120–22 (D.D.C. 2011). Nor does it develop an argument that the SBA's size determination is a deprivation of property or is otherwise "a sufficiently grave sanction such that the duty to provide notice is triggered." United States v. Chrysler Corp., 158 F.3d 1350, 1355 (D.C. Cir. 1998) (internal quotation marks omitted). In any event, "[t]his is not a case in which the [SBA's] interpretation is so far from a reasonable person's understanding of the regulations that they could not have informed [DMI] of the agency's perspective." Sec'y of Labor, Mine Safety & Health Admin. v. Spartan Mining Co., 415 F.3d 82, 88 (D.C. Cir. 2005) (internal quotation marks omitted). Indeed, to return to the central point, the most natural reading of the old regulation was that it covered acquisitions running in either direction.[4]

DMI's final argument to the contrary is that such a reading would create an arbitrary distinction between types of growth. DMI notes (correctly) that a small business can undergo any amount of traditional growth during the life of a contract without triggering an obligation to recertify. Given that freedom to grow by traditional means—"[t]heoretically, but not probably, the firm could grow to the size of a Lockheed Martin or Boeing"—DMI contends it is arbitrary to require recertification in the case of growth through the acquisition of other businesses. Pl.'s Reply

---

[4] The Court also observes that the SBA's proposal of the new version of the regulation, in which it indicated its interpretation of the old version, was published in May 2012, more than a month before DMI made the first of the acquisitions at issue here. See Compl. ¶ 21 ("DMI acquired Mission Critical Wireless, LLC in July 2012").

at 15–16. But this distinction is not arbitrary. Traditional growth is likely to be incremental and moderate. Mergers and acquisitions are more likely to generate sudden and drastic increases in size. If the aim is to keep down the number of government contracts being performed by "small" businesses that are not truly small—and especially by those that are nowhere near small—it is rational to distinguish between these modes of growth.

In sum, based on the materials and arguments presented at this stage of the case, the Court finds that the old regulation is most naturally read to require recertification when a small business makes an acquisition. The regulation's history and subsequent revision do not undermine that reading, and such a rule is not irrational. Accordingly, the Area Office's determination that the old regulation obliged DMI to recertify its size does not appear arbitrary, capricious, or contrary to law. Hence, DMI is unlikely to succeed on the merits in this case.

### 2. THE REMAINING FACTORS DO NOT CUT SHARPLY FOR DMI

The Court's conclusion that DMI is unlikely to succeed on the merits is almost certainly a sufficient basis for denying a preliminary injunction. For the sake of completeness, however, the Court will briefly address the other factors: irreparable harm, the balance of equities, and the public interest. See Winter, 555 U.S. at 20.

DMI's motion alleged that it would suffer three forms of irreparable harm if the size determination remains in effect. First, the Coast Guard, which is one of DMI's clients under a contract that expires soon, would be unable to use EAGLE II as a vehicle to award DMI a $40 million follow-on contract. Pl.'s Mem. at 19–20. Second, DMI would lose the opportunity to bid on a $1–2 million Census Bureau solicitation through a different small-business contract vehicle. Id. at 20–21. Third, it would similarly lose the opportunity to bid on a variety of upcoming task

orders—cumulatively worth hundreds of millions of dollars—under a total of six contract vehicles set aside for small businesses. Id. at 21; Pl.'s Reply at 18–20.

DMI acknowledged at the motion hearing, however, that the first two of these opportunities have now been taken off the table. Mot. Hr'g Tr. [ECF No. 11] at 29. As for the lost opportunity to bid on task orders generally, that is indeed a kind of harm, but the Court is not confident it is the sort to justify a preliminary injunction. Such harm "must be both certain and great, actual and not theoretical, . . . and of such imminence that there is a clear and present need for equitable relief." Mexichem Specialty Resins, Inc. v. EPA, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks omitted). Here, for starters, the Court has no idea how to estimate the likelihood of DMI's winning any of these task orders. The value of the opportunity to bid on a million-dollar contract is only $10,000 for someone who has a mere 1% chance of winning it. Some of the opportunities, moreover, are not particularly imminent: the highest value task order that DMI lists—an $85 million order from the Air Force—is scheduled for release in the first quarter of 2017. See Pl.'s Reply at 19. Finally, it is not clear that DMI is entirely foreclosed from obtaining these opportunities. The awarding agencies might not be able to proceed through the contract vehicles set aside for small businesses, but DMI conceded at the hearing that it is at least possible that those agencies could go outside those vehicles to award the work—and so could potentially still use DMI. Mot. Hr'g Tr. at 25 ("[An agency] could decide to do that, Your Honor, theoretically."); cf. Alamo Aircraft Supply v. Carlucci, 698 F. Supp. 8, 9 (D.D.C. 1988) (issuing preliminary injunction where complete suspension "would clearly preclude Alamo from obtaining new government contracts"). The Court does not doubt that DMI would be harmed to some degree if it were wrongly excluded from these small-business vehicles, but the Court is not convinced that "great" harm is "certain" and "imminen[t]."

Nor do the final two factors, the balance of equities and the public interest, weigh strongly in DMI's favor. The Court agrees with DMI that the SBA itself would not be meaningfully harmed by a preliminary injunction, but competing bidders that are actually small would be. And insofar as procuring agencies value having work performed by businesses that are actually (i.e., as a matter of present fact) small, they would be harmed as well. DMI objects that these are not fairly deemed "harms" unless the Court assumes the conclusion that DMI loses on the merits. Pl.'s Reply at 22. But that argument runs both ways: DMI's exclusion from small-business set-asides is fairly deemed a "harm" to it only if one assumes that DMI wins on the merits. Similarly, DMI's assertion of "a strong public interest in favor of the enforcement of public laws and regulations"—essentially the only thing DMI says regarding the public interest—does not help its cause. Pl.'s Mem. at 22. If the only identifiable public interest is the proper enforcement of the law, this factor simply leads back to the question of which party is more likely to succeed on the merits. And the answer to that question here is the SBA.

## CONCLUSION

Because DMI is unlikely to succeed on the merits of its challenge to the size determination, and—even assuming the merits assessment is not dispositive—the remaining preliminary injunction factors do not weigh strongly in DMI's favor, the Court concludes that preliminary relief is unwarranted in this case. Accordingly, it is hereby

**ORDERED** that [2] DMI's motion for a preliminary injunction is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Dated: December 11, 2015